**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHARLOTTE BRENT-BELL, ) | |
| ) | |
| Plaintiff, ) | Case No. 17 C 1099 |
| ) | |
| v. ) | Judge Joan Gottschall |
| ) | Magistrate Judge Gilbert |
| THE CITY OF CHICAGO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**CITY'S RESPONSE IN OPPOSITION TO MOTION TO
<u>COMPEL COMPLAINT REGISTER FILES</u>**

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Reiter Burns, LLP, responds in opposition to Plaintiff's motion to compel complaint register files as follows:

**Introduction**

Plaintiff seeks production of all Complaint Register files ("CR files"), including complaints initiated against *any* Chicago police officer related to: (1) false arrest; (2) illegal search; (3) illegal detention; and (4) failure to provide medical care and/or medication to persons held in custody from August 1, 2011 through August 31, 2016. (Ex. ___, Plaintiff's Request to Produce to Defendant City.) Despite the City's ongoing attempts to work with plaintiff to narrow the scope of her request, which includes over 1,500 files, plaintiff now moves this Court to compel production of all such files. Plaintiff's failure to exhaust efforts to come to an accord with the City regarding her request for CR files provides a basis under Local Rule 37.2 to deny Plaintiff's motion. Additionally, Plaintiff fails to set forth a *Monell*-related need sufficient to overcome the undue burden and expense of production of her demand for CR files related to complaints made against *all* police officers in the broad categories requested. For these reasons, plaintiff's motion should be denied. Alternatively, this Court should stay ruling on plaintiff's motion until resolution

of the City's motion to bifurcate plaintiff's *Monell* claims until resolution of the underlying constitutional claims.

**Background**

Plaintiff's claims arise from her August 15, 2016 arrest for harassment of a witness. On August 5, 2016, Griselda Perry called police after she learned plaintiff (her neighbor) was taping/photographing outside while Griselda was removing personal items from her home before relocating as part of a witness protection program. Ms. Perry was placed in a witness protection program as a result of threats made to her life by her husband, Keith Perry. Plaintiff and Keith Perry were arrested for harassment of a witness on August 15, 2016 after Defendants Childs and Struck learned plaintiff's photographs were provided to Keith Perry, who attempted to introduce them in court proceedings involving Griselda. Following Plaintiff's arrest, she was transported from her home to the police station where she was placed into a conference room and questioned about the photographs and her interactions with Keith Perry. Plaintiff was allowed to sit with her husband while in the conference room, who at one point administered to Plaintiff her daily medication.[1] Upon request, Plaintiff was given tea, water, pizza, and access to the bathroom. She was also provided the use of Defendant Childs' jacket when she became cold. Plaintiff signed a consent to search her cell phone and provided oral statements to detectives and a felony review assistant state's attorney. She also agreed to provide a court-reported statement. However, before the court reporter arrived, plaintiff began feeling ill, an ambulance was called, and she was transported to a hospital where she stayed until August 17. She was never charged and prosecuted

---

[1] Plaintiff's averment that she was "essentially detained 'under the radar'" is belied by the presence of Plaintiff's husband and daughter at the police station, as well as the deposition testimony and documents reflecting supervisor approval of probable cause for plaintiff's arrest and later release without charging.

for any offense related to the August 5 incident. Plaintiff's cell phone was returned to her after the decision not to charge was made.

Plaintiff alleges constitutional claims for unlawful arrest and detention; unlawful search (related to the post-arrest search of Plaintiff's cell phone); denial of medical care; conspiracy; and failure to intervene. (Dkt. 77, Third Amended Complaint ("TAC"), pp. 7-10.) Plaintiff also alleges a broad claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the City, which alleges the City failed to promulgate proper or adequate rules, regulations, policies, and procedures regarding: (a) the arrest, detention and interrogation of individuals, including witnesses[2]; (b) the search of individuals[3] and their property; and (c) the provision of medication or medical care to individuals with serious medical conditions and/or in need of medical assistance while in the custody of or detained by the Chicago Police Department ("CPD"). (*Id.*, at pp. 11-20.) Plaintiff claims violations of her rights were also caused by the City's failure to adequately train, supervise, and discipline its officers. (*Id.*, p. 15.)

In her motion, plaintiff alleges Defendants Childs and Struck testified that "the chain of events which took place with Plaintiff on August 15, 2016 … was an engrained part of the policies and practices of the [CPD]". (*See* Dkt. Pl.'s Mot., at p. 2.) However, there is no support for this statement in Childs or Struck's deposition testimony. Likewise, the referenced "events" are inaccurate and require clarification. First, there is no testimony any officers were "direct[ed] to falsify a police report." Deposition testimony revealed that Defendants Kotlarz and Lopez assisted Childs and Struck in their investigation by conducting the arrest of Keith Perry. While preparing the arrest report related to his arrest, Lopez was asked to further assist in the investigation by preparing the arrest report for plaintiff, although Defendants Manaois and Struck were the actual

---

[2] There is no factual allegation in this case that any witnesses were improperly interrogated.
[3] Nor is there any factual allegation that Plaintiff (or any other individual) was improperly searched.

3

arresting officers. There is no testimony from anyone that Kotlarz was "direct[ed] to falsify" that report. Second, Defendants did not destroy "the only evidence" in support of probable cause. Defendants Struck and Childs testified Griselda Perry signed a complaint for harassment of a witness against plaintiff on or about August 15, 2016. They further testified they probably shredded the complaint after it was determined plaintiff would not be charged. However, Ms. Perry's phone calls to 911 to report Plaintiff's harassment were preserved.[4] Likewise, officers responding to Ms. Perry's calls created a police report documenting Ms. Perry's concerns and that Defendant Childs was contacted to conduct a further investigation. Additionally, numerous police reports and recorded jail calls document Keith's harassment and death threats against Griselda and his use of family and friends, including plaintiff, to harass Grisela and report her activities to him. And third, plaintiff's cell phone was not "searched without her consent." Following her arrest, plaintiff signed a consent to search her cell phone; however, she avers she only authorized officers to view the photographs on her phone and not her call logs.

**Argument**

**I.     Plaintiff Has Not Complied with Local Rule 37.2.**

As set forth in plaintiff's motion, plaintiff and the City's counsel communicated numerous times in an effort to resolve this dispute without Court intervention. However, plaintiff's demand that the City produce all the requested files or stipulate it will not challenge Plaintiff's undefined *Monell* claim by disputing the sufficiency of a smaller number of files used to support it, creates a Hobson's choice. Plaintiff's "take it or leave it" approach to resolving the City's burden of producing 1,500 files does not evidence a good faith effort to resolve the parties' differences

---

[4] During two separate calls, Griselda reported that her neighbor [plaintiff] was videotaping outside her home, which Griselda found "harassing". She stated she has a case pending and is concerned because she is a victim of a domestic battery and is being relocated by the state's attorney's office.

4

without court intervention and provides a basis for this Court to deny plaintiff's motion. *Chamberlain Group v. Lear Corp.*, No. 05 C 3449, 2010 WL 2836975, *2 (N.D. Ill. July 15, 2010) (failure to make good faith attempts to resolve dispute alone is grounds for denying motion).

In response to Plaintiff's request for CR files, the City ran a search for relevant topics to determine the burden of producing the requested documents. The search results yielded approximately 1,500 files. During discussions, Plaintiff agreed to accept six months to a year's worth of files as long as the City stipulated that any agreed number of files exchanged was a "sufficient sample size from which to determine whether a practice, custom, or policy existed for purposes of Section 1983 municipal liability." After consultation with a statistician and a police practices expert, the City advised plaintiff of two problems with plaintiff's proposed stipulation. First, production of six months to a year's worth of CR files, are just that – six months to a year's worth of files, and represent complaints made and investigations of complaints conducted during that period of time in relation to the identified topics. Such a production does not constitute a statistically relevant "sample" of a longer period of time.[5] Second, for the City to agree to stipulate and, accordingly, waive its right to later challenge the sufficiency of the sample size, the City needs to know the *Monell* theory plaintiff is seeking to prove by use of the files (i.e. to conduct a comparison of sustained rates for the purpose of showing a failure to discipline). Requiring the City to blindly stipulate the "sample size" is sufficient to determine "whether a practice, custom, or policy existed for purposes of Section 1983 municipal liability" puts the City in the impossible position of either expending great resources to copy, review, redact, and produce 1,500 files or leave itself without the ability to refute plaintiff's claim that a shorter time period of files establishes *Monell* liability.

---

[5] Plaintiff rejected the City's proposal that the parties attempt to reach an agreement regarding a random sampling of files from the 2011 to 2016.

During the City's last oral communication with plaintiff on the topic of her proposed stipulation, the City again requested plaintiff to articulate the *Monell* theory she believed would be supported by production of the requested CR files so that the City could propose an acceptable stipulation. Rather than try to reach such an accord, plaintiff filed the instant motion. Plaintiff's failure to engage in "good faith" discussions as mandated by Local Rule 37.2 requires denial of plaintiff's motion. *See West Bend Ins. Co. v. Zurich American Ins. Co.,* 308 F. Supp. 954, 958-59 (N.D. Ill. Apr. 11, 2018) (chatting for a bit about a dispute and maintaining an untenable position at worst or a tenuous position at best, is not engaging in a good faith meet and confer).

## II. Plaintiff Fails to Show a Need for the Requested Files Sufficient to Overcome the Burden Created by Their Production.

Plaintiff's request for approximately 1,500 CR files will require the City to expend an enormous amount of time and expense copying, reviewing, redacting, and stamping the files for production. Plaintiff's burden of showing that "the policymakers of the City were 'deliberately indifferent as to [the] known or obvious consequences' of the City's customs or practices" (*see* Pl.'s Mot., p. 6.) does not overcome the burden of production because she fails to articulate how production of 1,500 CR files will provide the proof she needs.[6]

Plaintiff alleges the requested CR files "are not unduly burdensome considering the wide range of constitutional violations alleged..." (Pl.'s Mot., p. 6.) However, it is apparent plaintiff seeks production of all 1,500 CR files with the intention of shifting the focus of the lawsuit from plaintiff's arrest to a drawn-out series of disputes related to Defendant Officers post-arrest conduct. Indeed, Plaintiff's claims have become more far-reaching and unfocused despite completion of

---

[6] During Rule 37.2 discussions, in an effort to understand plaintiff's "need" for the CR files, the City asked plaintiff to confirm that review of the requested CR files for the purposes of supporting her *Monell* claim will be conducted by an expert. Plaintiff indicated she does not have an expert and cannot commit that analysis of the files will be conducted by an expert.

most of the party depositions. "[D]iscovery is not to be used as a fishing expedition." *EEOC v. Harvey Walner & Associates*, 91 F.3d 963, 971 (7th Cir. 1996). And Plaintiff's "wide range" of alleged constitutional violations provide an insufficient basis for requiring the City to endure the burden of responding to her request.

**III.      Alternatively, Any Decision to Require the City to Produce CR Files Related to Non-Party Officers Should be Stayed Pending Briefing and Resolution of the City's Bifurcation Motion.**

Evidence adduced during discovery demonstrates plaintiff was arrested and detained based on probable cause. Faced with these facts, plaintiff seeks to expand her already broad *Monell* claim. She alleges "[d]iscovery has uncovered serious misconduct" not otherwise alleged in the TAC, including: destruction of felony complaints against plaintiff, the creation of an arrest report by an officer not involved in plaintiff's arrest, purposeful detention in a conference room "as opposed to going through normal channels of lock-up where a record of medical needs would have been made", and improper inventorying of property. (*See* Pl.'s Mot., at p. 7.) However, because plaintiff was never charged with a crime, she is unable to show how these new alleged acts of misconduct against the Defendant Officers, including improper search of her phone, falsification of police reports, and the failure to be taken to lockup for processing, constitute a violation of plaintiff's constitutional rights. It is clear plaintiff intends to use *Monell* to confuse the issues. Accordingly, the City intends to file a motion to bifurcate plaintiff's *Monell* claim. If this Court is considering granting plaintiff's motion, in whole or in part, it should stay any such ruling until after it has ruled upon the City's motion to bifurcate.

## Conclusion

Wherefore, Defendant City requests this Court deny Plaintiff's motion to compel production of the requested CR files or, alternatively, stay ruling on plaintiff's motion until resolution of the City's motion to bifurcate plaintiff's *Monell* claims.

Dated: September 4, 2018          Respectfully submitted,

/s/ Elizabeth A. Ekl
*One of the Attorneys on behalf of Defendant City of Chicago*

Terrence M. Burns
Paul A. Michalik
Katherine C. Morrison
Elizabeth A. Ekl
Reiter Burns LLP
311 South Wacker Drive, Suite 5200
Chicago, Illinois 60606
Tel: (312) 982-0090

## **CERTIFICATE OF SERVICE**

I, Elizabeth A. Ekl, an attorney, hereby certify that on September 5, 2018, I electronically filed the foregoing **Defendant City's Response in Opposition to Plaintiff's Motion to Compel CR Files** with by causing it to be delivered via the Court's ECF case filing system to the person(s) named in the attached service list.

/s/ Elizabeth A. Ekl

## **SERVICE LIST**

**Charlotte Brent-Bell v. City of Chicago, et al.
Case No. 17 C 1099**

*Attorneys for Plaintiff*
Jonathan I. Loevy
Arthur R. Loevy
Steven E. Art
Julie M. Goodwin
Aisha N. Davis
Sean Starr
Loevy & Loevy
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
(312) 243-5900
jon@loevy.com
arthur@loevy.com
steve@loevy.com
julie@loevy.com
aisha@loevy.com
sean@loevy.com

Paralegal:
Abe Corrigan – abraham@loevy.com

*Attorneys for Defendant Officers Joseph Struck, Pamela Childs Laughlin, Sherry Kotlarz Joseph Lopez, Cynthia R. Nichols, Sgt. Louis D. Boone III, and Audie Manaois*
Elaine C. Davenport
Sanchez Daniels & Hoffman LLP
333 West Wacker Drive
Suite 500
Chicago, IL 60606
(312) 641-1555
edavenport@sanchezdh.com