**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLOTTE BRENT-BELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 1099 |
| | ) | |
| v. | ) | Judge Joan Gottschall |
| | ) | |
| THE CITY OF CHICAGO, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S MOTION TO BIFURCATE PLAINTIFF'S §1983
*MONELL* CLAIM AND STAY DISCOVERY AND TRIAL ON THAT CLAIM**

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Reiter Burns, LLP, pursuant to Federal Rules of Civil Procedure 42(b) and 26(d), moves this Court to: (1) bifurcate Plaintiff's § 1983 *Monell* claim and, (2) stay discovery and trial on that claim. In support thereof, the City states as follows:

**BACKGROUND**

Plaintiff's underlying claims, which arise from her August 15, 2016 arrest and detention, are straightforward. (*See* Dkt. 77, Third Amended Complaint ("TAC"), ¶ 1.) Plaintiff alleges she was arrested without probable cause and transported from her home to the police station where she was placed into a conference room and interrogated for hours. (*Id.*, ¶¶ 1, 4, 47.) She alleges, during that time, Defendant Officers searched her phone without permission. (*Id.*, ¶ 27.) She also alleges that despite repeated requests for her purse so she could take her medications, Defendant Officers delayed her access to the medications. (*Id.*, ¶ 30.) Plaintiff claims throughout the day, she began to feel progressively more ill and experienced dizziness, nausea, and chest pains. (*Id.*, ¶ 34.) She claims as a result of her arrest and detention, she blacked out, became unresponsive, and suffered a heart attack. (*Id.*, ¶ 36.) She was taken to the hospital in an ambulance. (*Id.*, ¶ 37.) She was never

charged with a crime. (*Id.*, ¶ 43.) Plaintiff alleges her constitutional rights were violated as a result of Defendant Officers' unlawful arrest and detention; unlawful search (related to the post-arrest search of her cell phone); denial of medical care; conspiracy; and failure to intervene. (Dkt. 77, TAC, pp. 7-10.)

The TAC includes a broad claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which alleges the City failed to promulgate proper or adequate rules, regulations, policies, and procedures regarding: (a) the arrest, detention and interrogation of individuals, including witnesses; (b) the search of individuals and their property; and (c) the provision of medication or medical care to individuals with serious medical conditions and/or in need of medical assistance while in the custody of or detained by the Chicago Police Department ("CPD") (*id.*, ¶ 74) and, alternatively, the misconduct described in the TAC was undertaken pursuant to policies and practices of the City (*id.*, ¶¶119-120). Plaintiff claims violations of her rights were also caused by the City's failure to adequately train, supervise, and discipline its officers. (*Id.*, ¶ 75.) She also alleges the existence of a "code of silence". (*Id.,* ¶¶ 102-107).

To proceed on such broad and boilerplate allegations will require onerous amounts of discovery, time, and costs, all of which may be unnecessary, and will hinder efforts to conclude discovery in a timely manner.[1] Proceeding on these claims will also consume large amounts of judicial resources and create high risks of prejudice to the parties. Thus, to avoid these costs and potential prejudices, Plaintiff's *Monell* claims should be bifurcated and stayed until trial is completed on the underlying claims.

---

[1] Fact discovery is scheduled to conclude September 17, 2018. (Dkt. 87.) However, a joint agreed motion to extend discovery an additional 60 days to complete the depositions of a number of fact witnesses is forthcoming.

## LEGAL STANDARD

Federal Rule of Civil Procedure 42 states, in relevant part, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." FED. R. CIV. P. 42(b). Only one of these criteria need be met for bifurcation to be appropriate. *Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir. 1994). The court has "considerable discretion" over whether to bifurcate claims, *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000), but may bifurcate "separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Federal Insurance Company*, 499 F.3d 692, 700 (7th Cir. 2007). That is, of course, so long as the non-moving party suffers no prejudice or a violation of the Seventh Amendment. *Id.* Weighing a motion to bifurcate requires "a pragmatic mindset," *Cruz v. City of Chicago*, No. 08 C 2087, 2008 WL 5244616, at *1 (N.D. Ill. Dec. 16, 2008), and is a "case-specific assessment of the advantages and disadvantages of bifurcation." *Ojeda-Beltran v. Lucio*, No. 07 C 6667, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008). Should bifurcation be warranted, Federal Rule of Civil Procedure 26 allows the court to stay discovery on the *Monell* claim. FED. R. CIV. P. 26(d); *Jones v. City of Chicago*, No. 98 C 5418, 1999 WL 160228, at *3 (N.D. Ill. Mar. 10, 1999).

## ARGUMENT

Bifurcating and staying plaintiff's *Monell* claim best serves the Rule 42 interests of convenience, economy, expedition, and avoidance of undue prejudice; it also represents a sound exercise of this Court's inherent power to control its docket. *Krocka*, 203 F.3d at 516. Requiring the parties to focus on the underlying constitutional violations also results in a more efficient streamlined litigation. Further, the City will agree to a Limited Consent to Entry of Judgment Against the City ("Limited Consent Agreement") if plaintiff is to prevail on her underlying

constitutional claims against the Defendant Officers. (*See* Exhibit A, Limited Consent to Entry of Judgment Against the City ("Limited Consent Agreement").) Accordingly, bifurcation and a stay of plaintiff's *Monell* claims is a sensible decision favorable to all parties.[2]

I. **Bifurcation Best Serves the Interests of Litigation and Judicial Economy.**

    A. **Bifurcation Allows Parties to Avoid Burdensome and Potentially Unnecessary Discovery and Litigation Costs.**

As a general rule, a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012). The plaintiff must claim that she was deprived of a right secured by the Constitution or federal law by individuals "acting under color of law." *Parker v. Franklin County Cmty. School Corp.*, 667 F.3d 910, 925 (7th Cir. 2012). The City, therefore, cannot be held liable unless plaintiff first succeeds on claims against the Defendant Officers.

There is an exception to this general rule: a municipality can be held liable even if there is no liable individual so long as such a finding would not create an inconsistent verdict, such as when the officer an officer is entitled to qualified immunity. *See Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010). Given the nature of plaintiff's claims in this case, however, such a scenario is unlikely. *See Veal v. Kachiroubas*, No. 12 C 8342, 2014 WL 321708, at *3–4 (N.D. Ill. Jan. 29, 2014). The Seventh Circuit in *Thomas* set forth three factors that courts should consider in determining whether the municipality's liability is dependent on the claims against its officers: "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Thomas*, 604 F.3d at 305. The alleged constitutional violations

---

[2] The City's counsel met and conferred with plaintiff's counsel, Julie Goodwin, prior to appearing before this Court on September 5, 2018 to determine if the instant motion may be filed as unopposed. Plaintiff's counsel represented that plaintiff is opposed to this motion.

4

(unlawful arrest and detention; unlawful search (related to the post-arrest search of her cell phone); denial of medical care; conspiracy; and failure to intervene) are all based entirely on the Defendant Officers actions. Under the claims asserted in this case, the liability of the Defendant Officer will be a necessary predicate for municipal liability. *Matthews*, 675 F.3d at 708-09. Additionally, although plaintiff's TAC sets forth a broad kitchen sink "theory of municipal liability", wherein she asserts her *Monell* claim based on many alternative possible theories (*see* TAC, pp. 11-20), the nature of the underlying constitutional claims still hinge on a finding the Defendants Officers committed the constitutional violation. In regard to the third factor, the Defendant Officers have raised a qualified immunity defense. However, the City agrees to entry of judgment against it pursuant to the attached Limited Consent Agreement, Exhibit A, if an underlying constitutional violation is found, even if the individual defendants prevail on their qualified immunity defenses.

Bifurcation "permits a bypass of discovery relating to the municipality's policies and practices, which . . . add significant time, effort, and complications to the discovery process." *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000). Bifurcation in this case is especially attractive where Plaintiff's *Monell* claim is so broadly pled. Thus, to engage in litigation and discovery on these claims, now – when the parties are nearing the end of fact discovery, would be extremely onerous, inefficient, and potentially unnecessary.

The burden of discovery and added complexity of including plaintiff's *Monell* claim at a trial in this matter are apparent. The Court need only look at plaintiff's TAC (pp. 11-20, ¶¶ 74-120), which alleges the City failed to promulgate proper or adequate rules, regulations, policies, and procedures regarding: (a) the arrest, detention and interrogation of individuals, including witnesses; (b) the search of individuals and their property; and (c) the provision of medication or

5

medical care to individuals with serious medical conditions and/or in need of medical assistance while in the custody of or detained by the Chicago Police Department ("CPD") (*id.*, ¶ 74) and, alternatively, that the misconduct described in the TAC was undertaken pursuant to policies and practices of the City (*id.*, ¶¶ 119-120). It further alleges a failure by the City to adequately train, supervise, and discipline its officers (*id.*, ¶ 75) and the existence of a "code of silence" (*id.*, ¶¶ 102-107). To support these allegations, plaintiff's TAC references, *inter alia*: a "finding" by the *Chicago Reporter* in 1980's that "tens of thousands of citizens were arrested … in cases that almost never resulted in a conviction" (*id.*, at ¶ 80); a "pattern of illegal seizures" in the 1990's related to the gang loitering ordinance (*id.*, at ¶ 81); the 161 page report from the Department of Justice issued January 13, 2017 (finding "a special enforcement unit of Chicago Police Officers routinely and improperly stopped and searched black and Latino community members and seized their property" and referencing admission of a "code of silence") (*id.*, at ¶¶ 13, 99-100, 104, 110); 2003 lawsuit *Davis v. City of Chicago* ("alleging illegal searches and seizures by Chicago Police officers" in the early 2000's) (*id.*, at ¶ 83); "a study of arrests by the American Civil Liberties Union" finding "there were a quarter million Fourth Amendment seizures in Chicago during the summer of 2014" (*id.*, at ¶ 84); and an April 2016 report by the Police Accountability Task Force ("confirm[ing] that searches and seizures of African-Americans, like Mrs. Brent-Bell, occurred at much higher rates than seizures of the rest of the population") (*id.*, at ¶¶ 85, 111). Discovery on even a fraction of plaintiff's *Monell* pleadings, let alone on the cross-referenced studies contained therein, will be onerous and time-consuming.

      The breath and scope of *Monell* discovery is further highlighted by plaintiff's recent motion to compel the City to produce over 1,500 complaint register ("CR") files in support of her *Monell* claim. (*See* Dkt. 90, Pl.'s Mot. to Compel and Dkt. 94, City's Resp., thereto.) Plaintiff admitted in

open court these files are not relevant to the underlying claims against the Defendant Officers, but moves "for production of complaint files made against all Department members by other citizens to prove the widespread nature of Plaintiff's claims."[3] (*Id.*, p. 3.) Production of the requested files will require the City to expend an enormous amount of time and expense identifying, locating, copying, reviewing, redacting, and stamping the files for production. Plaintiff's claim that "the requested CR Files are proportional to the needs of this case and are not unduly burdensome considering the *wide range of constitutional violations alleged* by Plaintiff" (emphasis added) (*id.*, at 7) highlights the need for bifurcation.

In addition to the requested document production, plaintiff also seeks the testimony of Rule 30(b)(6) witnesses from various divisions within the police department. (*See* Exhibit B, Amended Notice of 30(b)(6) Deposition.) While testimony of a witness to address questions related to certain City's policies is arguably relevant to the underlying case[4], to fully address all the purely Monell-related topics identified in plaintiff's notice, including training, supervision and the practices of officers in the Detective Division, the City must also present testimony by witnesses from the Bureau of Detectives, the Training Division, and possibly others. And, as with most other *Monell* litigation, costly expert discovery will invariably follow fact discovery, with both plaintiff and the City likely to retain expert witnesses. This will generate numerous lengthy reports and depositions thereby causing all parties to incur additional significant costs. *See Moore v. City of Chicago*, No. 02 C 5130, 2007 WL 3037121, at *9 (N.D. Ill. Oct. 15, 2007).

It is well established that trial judges have "substantial case-management authority to control the course of litigation in their courts. In cases lacking private incentives to limit the scope

---

[3] The CR files at issue in plaintiff's motion relate to non-party officers. The City has produced CR files related to the Defendant Officers for a period of ten years preceding the August 2016 incident.

[4] As a result of the potential for overlap during 30(b)(6) testimony on the issue of the City's policies, the City will produce a witness from the Research and Development section for deposition.

of litigation, active judicial oversight can help prevent straightforward cases like this one from spiraling out of control." *Montanez v. Simon*, 755 F.3d 547, 552 (7th Cir. 2014). The Seventh Circuit commented on this very issue as it relates to *Monell* claims. In *Swanigan v. City of Chicago*, the court stayed the *Monell* claim until the claims against the individual defendant officers were litigated and resolved. 775 F.3d 953, 957 (7th Cir. 2015). On appeal on other matters in *Swanigan*, the Seventh Circuit made special mention of the district court's decision to stay *Monell* discovery, and found it was "sensible, especially in light of the volume of civil-rights litigation that district courts must manage." *Id.* at 962. And, in situations where the plaintiff seeks only monetary damages and "a municipal defendant is willing (or required) to indemnify individual defendants for compensatory damages as well as an award of attorney's fees and costs", there "is no need for the parties to spend time and money litigating a *Monell* claim." *Id.* at 962.

### B. Bifurcating and Staying Plaintiff's *Monell* Claim Best Serves the Interests of Judicial Economy.

Granting this motion also promotes judicial economy. Bifurcation of the *Monell* claim eliminates the need for (1) judicial intervention into discovery disputes arising from this claim; (2) briefing and ruling on the summary judgment motion for *Monell* liability that the City will invariably file; and (3) if the *Monell* claim survives summary judgment, presiding over a trial that will be longer and more factually and legally complex than a trial focused solely on the individual Defendant Officers' liability. *Medina*, 100 F. Supp. 2d at 895 ("The trial of the claims against the individual officers is . . . likely to be shorter, and perhaps significantly shorter, than a trial also involving *Monell* claims."). The Seventh Circuit has explicitly endorsed bifurcation as a means to avoid "the waste of the valuable time and resources of the court" in addition to serving the interests directly behind Rule 42. *Treece v. Hochsteler*, 213 F.3d 360, 365 (7th Cir. 2000). Indeed, the "willingness of many judges to grant [*Monell* bifurcation motions] stems in large part from

8

[this] recognition." *Terry v. Cook Cnty. Dep't of Corrs.*, No. 09 C 3093, 2010 WL 2720754, at *2 (N.D. Ill. July 8, 2010). As a result, staying *Monell* claims while the claims against the Defendant Officers are litigated is sensible, given the district courts' high volume of cases. *Swanigan*, 775 F.3d at 962. To that end, courts within the Northern District of Illinois have continued to bifurcate and stay *Monell* discovery for judicial efficiency.[5] Bifurcation of the *Monell* claim here would help eliminate the waste of valuable time and resources.

## II. Bifurcation Will Assist in Eliminating the Risk of Unfair Prejudice Against the Parties.

It is inevitable that a single trial on individual and *Monell* liability will severely prejudice all defendants. In addition, the concurring discovery and litigation on these claims may also prejudice plaintiff's case. Bifurcation of claims is an appropriate remedy to avoid such prejudice. FED. R. CIV. P. 42(b).

Introducing evidence relating to the allegations in plaintiff's *Monell* claim creates a substantial risk of prejudice for the individual Defendant Officers and undermines their ability to receive a fair trial. *Veal,* 2014 WL 321708, at *6. This danger weighs in favor of bifurcation. *See Tanner v. City of Waukegan*, No. 10 C 1645, 2011 WL 686867, at *9–10 (N.D. Ill. Feb. 16, 2011);

---

[5] *See Arrington v. City of Chicago*, Nos. 17 C 5345, 17 C 4839, 2018 WL 3861552 (N.D. Ill. Aug. 14, 2018) (Durkin, J.); *Williams v. City of Chicago*, No. 17 C 5186, --- F. Supp.3d ---, 2018 WL 2561014 (N.D. Ill. June 1, 2018) (Kendall, J.); *Ackerman v. Allen*, No. 16 C 6199, Dkt. 40 (N.D. Ill., April 27, 2017) (Castillo, J.), attached hereto as Exhibit C; *Rowden v. Mette, et al.*, No. 16 C 2917, Dkt. 28 (N.D. Ill. July 26, 2016); *Harris v. City of Chicago, et al.*, 14 C 4391, Dkt. 207 (N.D. Ill. June 14, 2016); *Vaughn v. Torres, et al.*, No. 15 C 3706 Dkt. 53 (N.D. Ill. May 18, 2016); *Horton v. City of Chicago, et al.*, 13 C 6865, Dkt. 181 (N.D. Ill. Jan. 26, 2016); *Claxton v. City of Chicago*, No. 14 C 10076, 2015 WL 5304630 (N.D. Ill., Sept. 9, 2015) (Ellis, J.); *Fuery v. City of Chicago*, No. 07 C 5428, 2015 WL 715281 (N.D. Ill. Feb. 17, 2015) (Ellis, J.) (denying reconsideration of *Monell* bifurcation); *Castellanos v. Lawryn, et al.*, No. 14 C 1841, Dkt. 43 (Kim, J.); *Walker, et al. v. City of Chicago, et al.*, No. 14 C 1756, Dkt. 66 (Cox, J.); *Taylor v. Hughes, et al.*, 13 C 4597, Dkt. 87; *Awalt v. Marketti*, No. 11 C 6142, 2014 WL 6908470 (N.D. Ill. Dec. 8, 2014); *Veal v. Kachiroubas,* 2014 WL 321708 (N.D. Ill. Jan. 29, 2014) (Lefkow, J.); *Taylor v. Kachiroubas*, Nos. 12 C 8321, 12 C 8349, 2013 WL 6050492 (N.D. Ill. Nov. 15, 2013) (Gottschall, J.); *Carr v. City of North Chicago*, No. 11 C 8836, 2012 WL 5463890 (N.D. Ill. Nov. 8, 2012) (Keys, J.).

Memorandum Order and Opinion, *Kitchen v. Burge, et al.,* No. 10-CV-4093, (N.D. Ill. Nov. 2, 2012), attached hereto as Exhibit D. In this situation, there is a "real danger that evidence admissible on the issues relating to conduct by the City . . . will contaminate the mind of the finder of fact in its consideration of the liability of the other defendant[s]." *Ojeda-Beltran*, 2008 WL 2782815, at *3; *Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 335346, at *2 (N.D. Ill. Mar. 1, 2002) ("[w]ithout bifurcation, the jury would likely hear evidence against the City of various acts of alleged police misconduct committed by numerous non-party officers to establish a policy or practice. Such evidence can be prejudicial to the individual defendants."). This is because plaintiff presumably will seek to introduce evidence regarding alleged acts of misconduct by non-party police officers against other individuals to prove her *Monell* claims. *Ojeda-Beltran*, 2008 WL 2782815, at *3.

The hallmark of a § 1983 claim is that a defendant is liable "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). So, the misdeeds of people other than defendants are entirely irrelevant to the claims against those defendants. Parading non-defendant officer misconduct in front of the jury would invite the jury to find the individual Defendant Officers guilty by association, rather than deciding liability based on their own actions.

Likewise, there is risk of prejudice against the City if the claims are tried in a single trial. *Monell* and its progeny provide plaintiffs with a vehicle to hold a municipality liable for its own conduct; it is not a means by which to hold a municipality liable on a form of some *respondeat superior* or vicarious liability. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011); *Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007) ("Misbehaving employees are

responsible for their own conduct, units of local government are responsible only for their policies rather than misconduct by their workers." (internal citations omitted)). A jury asked to weigh evidence of Defendant Officers' alleged misconduct and policy evidence may misconstrue the evidence or the complicated law surrounding *Monell* liability. The claims against all the Defendant Officers are largely fact-specific while the claims against the City are highly complex, requiring due consideration. The allegations against the individual Defendant Officers are serious, and if proven at trial, may cause the jury to hold the City liable on the *Monell* claims for misconduct by the Defendant Officers without giving those *Monell* claims their due deliberation. *Monell* would, then, devolve into a *respondeat superior* claim despite the law requiring that it not. *Milestone*, 665 F.3d at 780. Bifurcating the *Monell* claims from the claims against the individual Defendant Officers would avoid the risks of unfair prejudice and the misapplication of evidence or misinterpretation of law.

Further, courts have noted that *Monell* litigation may, at times, be prejudicial to a plaintiff's claims against individual defendants. Specifically, diverting attention from the individual claims would be a lengthy digression and a major expenditure of time and effort. That time and effort would be spent on something that does not bear on the individual claims, all of which might result in a greater detriment to plaintiff for what, ultimately, could have been entirely avoidable. *See,* Exhibit E, Transcript, *Ramirez v. City of Chicago*, No. 05-CV-317 (N.D. Ill. Mar 14, 2008); *Almaraz v. Haleas*, 602 F. Supp. 2d 920, 925–26 (N.D. Ill. 2008) (*Monell* discovery much broader than discovery against individual defendants and could result in lengthy and costly discovery unnecessary to the claims against the individual defendants). Conversely, a bifurcation and stay of the *Monell* claim does not bar plaintiff from asserting her *Monell* claims should she prevail in the claims against Defendant Officers. *Castillo v. City of Chicago*, No. 11 C 7359, 2012

11

WL 1658350, at *6 (N.D. Ill. May 11, 2012). Bifurcation and a stay of the *Monell* claims in this situation would reduce the risk of prejudice against all parties.

### III. Bifurcation Will Not Prejudice Plaintiff's Recovery of Any Compensatory Damages That She May Be Awarded.

Bifurcation and a stay of the *Monell* claims will not affect plaintiff's recovery of any compensatory damages a jury may award. If it is determined that Defendant Officers were acting within the scope of their employment at all relevant times during their encounter with plaintiff, the City has both a statutory and contractual[6] obligation to indemnify Defendant Officers for any compensatory damages awarded against them. *See* 735 ILCS 10/9-102. Along those lines, plaintiff cannot recover any additional compensatory damages based on the *Monell* claims if she has already recovered compensatory damages against Defendant Officers. *Almaraz*, 602 F. Supp. 2d at 926 (N.D. Ill. 2008); *see also Spanish Action Comm. of Chicago v. City of Chicago*, 766 F.2d 315, 321 (7th Cir. 1985).

### IV. If Plaintiff Prevails on Her Claims Against Defendant Officers, the City Will Agree to Limited Entry of Judgment Against It.

As discussed above, *Monell* litigation may ultimately prove unnecessary unless plaintiff can establish Defendant Officers violated her constitutional rights. If plaintiff cannot prove this, then municipality liability cannot stand. *See Treece*, 213 F.3d at 364. If plaintiff does prevail against one or more of the Defendant Officers, however, the City will consent to the limited entry of a judgment against it for the amount of compensatory damages caused by the violation, plus reasonable attorneys' fees, without requiring plaintiff to prove the elements of § 1983 municipal liability. (*See* Exhibit A, ¶¶ 4–6.)

---

[6] *See* Agreement Between the City of Chicago Department of Police and the Fraternal Order of Police Chicago Lodge No. 7, effective July 1, 2012 through June 30, 2017, at p. 34, *available at* http://www.cityofchicago.org/content/dam/city/depts/dol/Collective%20Bargaining%20Agreement3/FOPCBA2012-2017_2.20.15.pdf .

This is no small benefit to plaintiff as "the decision of a plaintiff to pursue a *Monell* claim carries with it a heavy burden of discovery and proof." *Medina*, 100 F. Supp. 2d at 894. The Limited Consent Agreement allows plaintiff to obtain a judgment against the City for all the compensatory damages against the Defendant Officers to which she is entitled, as long as she proves that her constitutional rights were violated. This avoids the costly and time-consuming litigation of the *Monell* claim.[7] Further, even if Defendant Officers successfully assert a qualified immunity claim, the Limited Consent Agreement still governs. *See* Exhibit A, ¶ 5. Given the Limited Consent Agreement, "disposition of the individual claims will either legally or practically end the litigation . . . If the plaintiff prevails against the officer[s] on [her] § 1983 claim[s], [s]he is likely not to want or need to proceed any further . . ." *Medina*, 100 F. Supp. 2d at 895. Thus, the Limited Consent Agreement fulfills the goal to ensure full recovery of compensatory damages if plaintiff is successful.[8]

The Limited Consent Agreement should alleviate any concern the Court may have before granting bifurcation, as similar consent agreements have done so for other courts. *See Carr v. City of North Chicago*, 908 F. Supp. 2d at 930–33 (N.D. Ill. 2012). It allows plaintiff to fully recover her compensatory damages in the event she proves a constitutional violation against the Defendant Officers, while sparing her the cost and time necessary to litigate the *Monell* claims against the City and meet the proof requirements for such a claim. In short, it streamlines the issues before the Court while also removing the burden connected to *Monell* litigation.

---

[7] Courts have found that *Monell* is not simply a vehicle to force societal changes through judicial intervention rather than the legislative process, *Parker v. Banner*, 479 F. Supp. 2d 827, 834 (N.D. Ill. Mar. 22, 2007), and an actual controversy must exist for the claim to proceed.

[8] Based on plaintiff's allegations, she would only be able to recover monetary damages as no other relief is specifically requested or likely available. *See Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015) (double recovery and standing potential jurisdiction possible impediments to *Monell* suits); *see also City of Los Angeles v. Lyons,* 461 U.S. 95, 98-111 (1980) (discussing high burden necessary for plaintiff to seek injunctive relief for municipal policy claims).

## CONCLUSION

For the foregoing reasons, the City respectfully requests this Court: (1) bifurcate plaintiff's *Monell* claims pursuant to Federal Rule of Civil Procedure 42; (2) stay any discovery and/or litigation of the *Monell* claims pursuant to Federal Rule of Civil Procedure 26; and (3) enter the City's proposed Limited Consent Agreement, Exhibit A. Doing so will expedite and economize litigation of this case and remove any possibility that the individual Defendant Officers and the City will be unfairly prejudiced if the *Monell* claims and claims against the Defendant Officers were litigated simultaneously. For the same reasons, the City also respectfully requests that this Court stay discovery, and/or litigation of the *Monell* claims pending a ruling on this motion.

Dated: September 13, 2018            Respectfully submitted,

/s/ Elizabeth A. Ekl
*One of the Attorneys on behalf of Defendant City of Chicago*

Terrence M. Burns
Paul A. Michalik
Katherine C. Morrison
Elizabeth A. Ekl
Reiter Burns LLP
311 South Wacker Drive, Suite 5200
Chicago, Illinois 60606
Tel: (312) 982-0090

## CERTIFICATE OF SERVICE

I, Elizabeth A. Ekl, an attorney, hereby certify that on September 13, 2018, I electronically filed the foregoing **Defendant City of Chicago's Motion to Bifurcate Plaintiff's § 1983 *Monell* Claim and Stay Discovery and Trial on that Claim** causing it to be delivered via the Court's ECF case filing system to the person(s) named in the attached service list.

                                                          /s/ Elizabeth A. Ekl

**SERVICE LIST**

**Charlotte Brent-Bell v. City of Chicago, et al.**
**Case No. 17 C 1099**

| *Attorneys for Plaintiff* | *Attorneys for Defendant Officers Joseph Struck, Pamela Childs Laughlin, Sherry Kotlarz Joseph Lopez, Cynthia R. Nichols, Sgt. Louis D. Boone III, and Audie Manaois* |
|---|---|
| Jonathan I. Loevy | |
| Arthur R. Loevy | |
| Steven E. Art | |
| Julie M. Goodwin | Elaine C. Davenport |
| Aisha N. Davis | Sanchez Daniels & Hoffman LLP |
| Sean Starr | 333 West Wacker Drive |
| Loevy & Loevy | Suite 500 |
| 311 N. Aberdeen, 3rd Floor | Chicago, IL 60606 |
| Chicago, IL 60607 | (312) 641-1555 |
| (312) 243-5900 | edavenport@sanchezdh.com |
| jon@loevy.com | |
| arthur@loevy.com | |
| steve@loevy.com | |
| julie@loevy.com | |
| aisha@loevy.com | |
| sean@loevy.com | |

Paralegal:
Abe Corrigan – abraham@loevy.com