**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **RONALD KITCHEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 C 04093** |
| | ) | |
| **JOHN BURGE, et al.,** | ) | **Judge John J. Tharp, Jr.** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant City of Chicago's ("City") motion to bifurcate and stay trial and discovery of the plaintiff's claim against the City under *Monell v. Department of Social Services,* 436 U.S. 658 (1976). For the reasons set forth below, the City's motion is granted, contingent on the City's acceptance of certain modifications to the "Stipulation for Entry of Judgment against the Defendant City of Chicago" ("Stipulation") that it has offered in support of its motion.

### I.      Background

Plaintiff Ronald Kitchen filed this action against, *inter alia*, Defendants City, former Chicago Police Officers John Burge, Michael Kill, Thomas Byron, and John Smith, former Chicago Police Superintendents Leroy Martin and Terry Hillard, Gayle Shines, former Director of the Chicago Police Department's Office of Professional Standards, and Thomas Needham, former Chicago Police legal counsel[1]. His complaint asserts claims under 42 U.S.C. § 1983

---

[1] Claims against other defendants, Police Sergeant John Byrne, Assistant State's Attorneys Mark Lukanich and John Eannace, former Cook County State's Attorney and Mayor of Chicago

**EXHIBIT D**

premised on allegations that the defendant police officers violated his constitutional rights by physically coercing him to confess to a quintuple murder that he did not commit.[2] He alleges that the abuse he suffered was part and parcel of a pattern of police torture and physical abuse by officers under the supervision of Defendant Burge while he was a commander in the Area 2 and Area 3 police districts during the 1980's and early 1990's, and that defendants Martin, Hillard, Needham, and Shines share responsibility for the violations against him because they knew of, and concealed, the pattern of interrogation abuses by Burge and police officers under his command. Kitchen also asserts a *Monell* claim against the City on the grounds that (i) the City maintained a "code of silence" that amounted to a *de facto* policy facilitating the use of torture to obtain confessions and (ii) the concealment of a pattern of torture by senior police and city officials were actions by official policymakers that were binding on the City (and for which the City is therefore accountable).

Pursuant to Federal Rule of Civil Procedure 42(b), the City has moved to bifurcate Kitchen's *Monell* claim against the City from the claims against the individual police officer and municipal defendants, and to stay discovery and trial on the *Monell* claim until the claims against the individual defendants have been resolved. Attached to the motion to bifurcate is a Stipulation, offered by the City to mitigate any potential prejudice to the plaintiff resulting from bifurcation of the *Monell* claim. *See* Def. Mot., Ex. B (attached to this Opinion as Appendix).

---

Richard M. Daley, and Cook County were previously dismissed. *See Kitchen v. Burge,* 781 F. Supp. 2d 721 (N.D. Ill. 2011).

[2] Kitchen also asserts various state law causes of action arising from the same alleged abuses.

2

## II.    Analysis

Rule 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Accordingly, the Seventh Circuit has confirmed that "a district judge may separate claims or issues for trial if the separation would prevent [1] prejudice to a party or [2] promote judicial economy." *Chlopek v. Federal Insurance Company,* 499 F.3d 692, 700 (7th Cir. 2007) (citing *Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir. 1999)). "If one of these criteria is met, the district court may order bifurcation as long as doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Id.* (citing *Krocka v. City of Chicago,* 203 F.3d 507, 516 (7th Cir. 2000)). "District courts approach bifurcation motions with a pragmatic mindset," *Cruz v. City of Chicago,* No. 08 C 02087, 2008 WL 5244616, at *1 (N.D. Ill. Dec. 16, 2008), and have "considerable discretion to order the bifurcation of a trial." *Treece v. Hochstetler,* 213 F.3d 360, 364-65 (7th Cir. 2000) (citing *Krocka,* 203 F.3d at 516).

Motions to bifurcate *Monell* claims are not uncommon and courts in this district "have both granted and denied similar motions by the City." *Ojeda-Beltran v. Lucio,* No. 07 C 06667, 2008 WL 2782815, at *1 (N.D. Ill. July 16, 2008) (citing *Medina v. City of Chicago,* 100 F. Supp. 2d 893, 895 (N.D. Ill. 2000); *Cadiz v. Kruger,* No. 06 C 05463, 2007 WL 4293976, at *2 (N.D. Ill. Nov. 29, 2007); *Elrod v. City of Chicago,* No. 06 C 02505, 2007 WL 3241352, at *1-2 (N.D. Ill. Nov. 1, 2007)). "Thus, there is a growing body of precedent in this district for both granting and denying bifurcation in § 1983 cases." *Terry v. Cook County Department of Corrections,* No. 09 C 03093, 2010 WL 2720754, at *1 (N.D. Ill. July 8, 2010) (citing *Elrod,* 2007 WL 3241352, at *2). "Therefore, [this Court's] ruling on bifurcation 'will consider the

3

principles in light of the facts of this case and the parties' arguments,'" *Ojeda-Beltran,* 2008 WL 2782815, at *1, and the result will turn on a "case-specific assessment of the advantages and disadvantages of bifurcation." *Id.*

### A. Bifurcation

Rule 42(b) is founded on pragmatic concerns and the chief virtue offered by the City's motion is the prospect that the burdens and costs of litigating the *Monell* claim can be avoided altogether. The City maintains that bifurcation of the *Monell* claim, coupled with its willingness to stipulate to liability if any of the individual defendants are found to have violated the plaintiff's constitutional rights, will likely result in dismissal of the *Monell* claim no matter what the outcome of the case against the individual defendants. If one or more individual defendants are found to have violated plaintiff's constitutional rights, the City will stipulate to the entry of a judgment against it for the amount of damages caused by the violations (plus reasonable attorney's fees), giving the plaintiff every bit of the compensation that he would potentially receive if he were to prevail on the *Monell* claim (as the *Monell* damages would be the very same damages arising from the constitutional violations by the individual officers). And if none of the individual defendants are found to have violated the plaintiff's constitutional rights, the City argues, there will be no basis on which to impose liability on the City pursuant to *Monell. See Treece,* 213 F.3d at 364 ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point," citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)).

Generally, the potential for prejudice to the plaintiff caused by bifurcation stems from the possibility for delay caused if trial of the *Monell* claim proves necessary for the plaintiff to

recover compensatory damages. *See, e.g., Cruz,* 2008 WL 5244616, at *2 ("[J]udges in this district have echoed Plaintiffs' concerns about delay of the case and possible prejudice to Plaintiffs from that delay."). For instance, if the finder of fact determined that the plaintiff's constitutional rights were violated, but the individual defendants were entitled to qualified immunity, the plaintiff would need to pursue his *Monell* claim in order to recover compensatory damages.

Mr. Kitchen's primary concern, however, appears to be vindication of his interest in obtaining a judgment against the City that is not derivative of liability of individual officers but rather reflects what he alleges is the City's own complicity in the alleged abuses suffered by himself and others. He therefore takes issue with what he characterizes as the City's premise that bifurcation will "extinguish" the *Monell* claim, asserting that he will still have the right to litigate the *Monell* claim whether or not he prevails against any of the individual defendants. He maintains that the City's stipulation does not moot his claim against the City even if it would yield no further legal or equitable relief. He further maintains that *Heller* does not preclude him from pursuing a *Monell* claim against the City even if the individual defendants are not found to be liable.

The latter argument does not bear scrutiny. While it is true that in *Thomas v. Cook County Sherriff's Dept.*, 604 F.3d 293, 305 (7th Cir. 2010), the Seventh Circuit held that, when it would not create an inconsistent verdict, a *Monell* claim can be maintained against a municipality when no employee had been found liable for a violation of an individual's constitutional rights, that holding provides no help to the plaintiff in the factual context of this case. As the *Thomas* court recognized, municipal liability may or may not depend on individual officer liability. *See Thomas,* 604 F.3d at 305. Accordingly, "to determine whether the [City's]

5

liability is dependent on its officers, [the Court looks] to the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.* at 305; *see also Tanner v. City of Waukegan,* No. 10 C 01645, 2011 WL 686867, at *3 (N.D. Ill. Feb. 16, 2011).

In *Thomas*, a case involving claims arising from a failure to provide necessary medical treatment, the court held that there was no inconsistency between a verdict absolving all of the individual County medical technicians of liability for an inmate's death while finding the County liable based on its failure to establish a system ensuring prompt review of inmate medical requests. The verdicts were not inconsistent, the court held, because the jury could have found that the medical technicians "were not deliberately indifferent to [the inmate's] medical needs, but simply could not respond adequately" because of the shortcomings of the County's policies and procedures for identifying inmate medical needs—shortcomings that the jury was entitled to find reflected deliberate indifference by the County itself. *Thomas,* 604 F.3d at 305.

Here, by contrast, there is no theory by which the City's alleged failures caused any injury to the plaintiff in the absence of violations by one or more of the individual defendants (or other City employees). The plaintiff's *Monell* claim is "based on two fundamental theories:" (1) the facilitation of torture and coerced confessions by a police "code of silence" which amounted to a *de facto* municipal policy and practice; and (2) "the concealment of the pattern of torture under Burge." Pl. Resp. at 2. Both of these theories of liability hinge on allegations that the plaintiff was, in fact, falsely arrested and imprisoned, tortured, and subjected to coercive interrogation. Am. Compl. at 31-35. Unlike *Thomas*, this is not a case where there is any possibility that a jury might conclude that well-intentioned municipal employees failed the plaintiff only because they were thwarted by the operation of impermissible municipal policies. Mr. Kitchen argues that he was beaten and tortured. If true, the individuals responsible violated

6

his constitutional rights;[3] if not true, then the City's alleged practice of promoting and concealing beatings and torture, though reprehensible, is not actionable under § 1983. As the City notes in its reply, "if the named individual defendants did not coerce a confession from plaintiff through the use of torture, a City policy of encouraging/concealing the use of torture to coerce confessions is, to quote *Heller*, 'quite beside the point.'"

When asked to identify how the City could be liable under *Monell* absent a finding that any of the individual defendants violated plaintiff's constitutional rights, the only theory that plaintiff's able counsel could offer is the possibility that a jury might find, on the basis of the evidence to be presented, that some *other* city employee was responsible for the alleged coercion, and that the City's violation could be premised on that violation. The possibility that the evidence will permit a finding that the plaintiff was tortured by a City employee that the plaintiff did not see fit to name in the complaint, while also finding that none of the individuals that the plaintiff did name as defendants in the case participated in the torture, seems extraordinarily remote. But even accepting that possibility, this basis for liability still depends on a finding that one or more municipal employees abused the plaintiff. Absent such a finding, municipal liability under *Monell* would be an inconsistent verdict and therefore precluded under *Heller* and *Thomas*. As a consequence, if the jury finds that no constitutional violation was committed by an individual City employee (whether named as a defendant or not), bifurcation will allow the parties and the Court to avoid trial of the *Monell* claim, and its associated expenses, all together.

---

[3] This assumes, for the sake of this discussion, that no viable affirmative defenses exist. The Court intends no judgment on that question at this juncture.

Mr. Kitchen's argument that his *Monell* claim will not be mooted by a damage award is, in the abstract, correct. Plaintiff may, for example, also seek equitable relief via *Monell* claims, *see* 436 U.S. at 690, but the amended complaint requests no equitable relief, and it is not clear in any event what equitable relief he could obtain at this point, even if successful. As the City points out, few, if any, of the police officers alleged to have engaged in the ongoing torture remain employed by the City. Burge, the alleged ringleader, was fired some 19 years ago. There are no allegations that the alleged pattern of torture and concealment still continues. A *Monell* claim, then, offers the plaintiff little, if any, relief that the City's stipulation would not provide in the event that he is successful.

But what the plaintiff wants from his *Monell* claim is not a remedy, but a verdict. His *Monell* claim "seeks a finding that the City itself was a 'moving force' of Mr. Kitchen's interrogation abuse and his ongoing unjust imprisonment over the ensuing decades. . .[because] completely independent of any direct financial benefit to Mr. Kitchen[,] there are vitally important objectives of deterrence and reform that would be furthered by a judgment holding the City liable for the misconduct of Burge and his associates." Pl. Resp. at 2, 5. Plaintiff points to a number of opinions from the Seventh Circuit affirming *Monell* liability even where the question of the City's liability "has little, probably no, practical significance" since the City is required by state law to indemnify its employees for damage awards made against them in respect of the torts they commit in the course of their employment. *Jones v. City of Chicago,* 856 F.2d 985, 995-96 (7th Cir. 1988).

None of the cases the plaintiff cites, however, address the question of whether, having obtained full compensation for constitutional violations caused by the acts of municipal employees, a plaintiff may still pursue a *Monell* claim against the municipality. Courts in this

8

district have taken opposing views on this question. *Compare, e.g.*, *Castillo v. City of Chicago,* No. 11 C 07359, 2012 WL 1658350, *6 (N.D. Ill. May 11, 2012) (Conlon, J.) (if defendant prevails against any individual defendant, he is not entitled to recover any additional compensatory-damages from the City by suing pursuant to *Monell*); *Almaraz v. Haleas*, 602 F. Supp. 2d 920, 924 (N.D. Ill. 2008) (Hart, J.) (stating that it would be "inappropriate" to permit a plaintiff to pursue a *Monell* claim in this circumstance); and *Grant v. City of Chicago,* No. 04 C 02612, 2006 WL 328265, *3 (N.D. Ill. Feb. 10, 2006) (Lefkow, J.) ("There is no case or controversy" between plaintiff and City where City's stipulation offers full compensation for the constitutional violations) *with Ojeda-Beltran,* 2008 WL 2782815, at *3 ("[B]ifurcation will not impinge on this right."); *Cruz,* 2008 WL 5244616, at *4 ("The City's Stipulation does not eliminate that right."); *Parker v. Banner,* 479 F. Supp. 2d 827, 834 (N.D. Ill. 2007) (Zagel, J.) (plaintiff may pursue *Monell* claim for nominal damages after successful trial against individual officers); *Cadiz*, 2007 WL 4293976, *9 (Schenkier, M.J.) ("we see no bar to the plaintiff recovering nominal damages ($1.00) since no additional compensatory damages cannot [sic] be proven").

The Court concludes that success against the individual defendants would not moot the plaintiff's *Monell* claim against the City. Constitutional claims may be pursued for nominal damages. As the Supreme Court has confirmed, "[b]y making the deprivation of such rights actionable for nominal damages . . . the law recognizes the importance to organized society that those rights be scrupulously observed." *Carey v. Piphus,* 435 U.S. 247, 266 (1978). And, as Judge Zagel has more pithily made the point, "[t]he mandate of 'case or controversy' only requires that something concrete be at stake—a dollar will do." *Parker,* 479 F. Supp. 2d at 834; *see also Bernhardt v. County of Los Angeles,* 279 F.3d 862, 872 (9th Cir. 2002) ("A live claim

9

for nominal damages will prevent dismissal for mootness," *citing Beyah v. Coughlin,* 789 F.2d 986, 988-89 (2d Cir. 1986)); *Lemon v. Tucker,* 84 C 04021, 1987 WL 7480, at *2 (N.D. Ill. Mar. 5, 1987) ("Lemon's claim is still not moot as he is eligible for nominal damages."); *Lavin v. Chicago Bd. of Ed.,* 73 F.R.D. 438, 440 (N.D. Ill. 1977) ("The plaintiff's action is not moot, as the prayer for nominal money damages gives vitality to the individual claim.") (citations omitted).

Further, the City does not argue (indeed, it disavows the notion) that its Stipulation would "extinguish" or bar Kitchen's *Monell* claim.[4] *See* Def. Reply at 2 ("The City has not requested the *Monell* claim be 'barred.' . . . Plaintiff's suggestion that the 'clear purpose' of the Motion 'is to extinguish the *Monell* claim entirely' necessarily misreads the Motion."). The City's motion seeks only to stay the *Monell* claim pending trial of the individual claims. The express premise of the City's motion is not that the *Monell* claim will *necessarily* fall by the wayside, but that there is a good chance that it may—either because the individual defendants are found not to have violated the plaintiff's rights or, if they are found to have done so, because the plaintiff concludes that the verdict, and the accompanying damage award, are sufficient after all. *See Parker,* 479 F. Supp. 2d at 834 ("If Plaintiff prevails [against the individual defendants], then he can decide whether it is worth pursuing his claim against the City."). Mr. Kitchen maintains that

---

[4] The Court recognizes, however, that in years past, the City has maintained that a stipulated judgment against it based on the liability of individual defendants would bar a *Monell* claim arising from the same incidents. *See, e.g., Cadiz,* 2007 WL 4293976, *1 and n.1 (discussing City's acknowledgment that its bifurcation motion actually sought dismissal of the *Monell* claim). The City will be held to its representations in this case, however; the Court construes these representations to waive any argument by the City that Plaintiff's *Monell* claim would be moot if asserted following entry of a judgment against the City based on its proposed Stipulation. If the City intends no such waiver, it has 14 days from the entry of this opinion to so notify the Court. If the City does so notify the Court, this Opinion and Order on the City's bifurcation motion will be withdrawn and reconsidered in light of the City's filing.

adjudicating the *Monell* claim against the City is vitally important to him, and the Court does not for a moment doubt his sincerity, but given the questionable marginal effect that a successful *Monell* claim would have in the wake of successful claims against the individual defendants, pursuit of that claim would be a highly quixotic endeavor—one that the plaintiff, who presently and understandably seeks vindication "for the violation of his rights by *all* responsible parties"— may ultimately reconsider in the context of his experience and results litigating his claims against the individual defendants.

The City's bifurcation motion, then, offers a substantial possibility of avoiding the costs and burdens of litigating the plaintiff's *Monell* claim. But the plaintiff also maintains that those costs and burdens are illusory. He asserts that litigating the *Monell* claim will require little, if any, additional discovery because the *Monell* discovery has already been conducted in three other cases also arising from allegations of torture targeting Defendant Burge and other individual defendants in this case. *See Patterson v. Burge,* No. 03 C 04433, 2010 WL 3894433 (N.D. Ill. Sept. 27, 2010); *Orange v. Burge,* No. 04 C 00168, 2008 WL 4443280 (N.D. Ill. Sept. 29, 2008); *Cannon v. Burge,* No. 05 C 02192, 2011 WL 4361529 (N.D. Ill. Sept. 19, 2011). According to the plaintiff, litigation of the *"Monell* claim will entail virtually no additional discovery." Pl. Resp. at 11.

While conceding that "some of the discovery as to the *Monell* claims [sic] has been completed," Def. Reply at 9, the City represents that *Monell* discovery in the other Burge cases has not been completed because those cases were bifurcated. The City maintains that there remains substantially more discovery to do in order to defend against a *Monell* claim that reaches back almost 40 years and involves numerous episodes pertaining to individuals other than Plaintiff Kitchen, as well as evidence about police training practices, interrogation techniques,

11

and disciplinary proceedings spanning those decades. Some of this evidence, as the plaintiff counters, will undoubtedly be relevant to the trial of the individual claims, but the City's claim that it will require substantial additional fact discovery to defend against the plaintiff's *Monell* claim appears to be a credible assessment in light of the breadth and scope of the claim that the plaintiff has asserted. Beyond the additional fact discovery that may be required, the City also points to the additional expert discovery that the *Monell* claim requires, and the likely summary judgment motion that will have to be decided up front if the claims are not bifurcated.

Plaintiff similarly maintains that its presentation of *Monell* evidence at trial will require only "a short, focused presentation…that will not consume an inordinate amount of trial time." Pl. Resp. at 11. His brief, however, then goes on to catalog, over the course of six full pages, what he concedes to be a "lengthy" list of the evidence that the plaintiff will seek to introduce to prove his *Monell* claim. Putting aside the dubious proposition that the presentation of evidence of alleged policies and practices spanning two decades will be "swift and compact"—and noting that the plaintiff fails to consider the additional time the City will need to respond—it is evident from the plaintiff's descriptions of this evidence, and the City's reply, that there promise to be substantial battles about the admissibility of much of this evidence. Questions about the admissibility of this evidence also diminish the force of Plaintiff's assertion that much of the evidence relevant to prove the *Monell* claim will be admitted in any event as Rule 404(b) evidence against the individual defendants; the identification of other acts evidence pursuant to Rule 404(b), of course, has not yet been presented to, much less resolved by, the Court, and assumptions that all such evidence that the plaintiff will seek to admit will be introduced at trial are, as yet, unfounded. Indeed, in this regard, the plaintiff's ability to pursue his *Monell* claim may be stronger if the claim is bifurcated, in that the arguments against the introduction of Rule

404(b) evidence relating to other instances of interrogation abuses on grounds of undue prejudice will be largely unavailable in the context of a trial of only the *Monell* claim, allowing the plaintiff to marshal more evidence to support the claim than he may have available if the claim were tried along with the claims against the individual defendants—which brings us to the question of prejudice to the individual defendants.

Plainly, the presentation of evidence relating to the wide-ranging allegations of the plaintiff's *Monell* claim create a substantial risk of prejudice for the individual defendants and undermines the ability of those defendants to receive a fair trial. *See, e.g., Ojeda-Beltran,* 2008 WL 2782815, at *3 ("We think a substantial risk exists that such evidence would be prejudicial to Defendant Officers in their attempts to defend themselves against Plaintiffs' claims and conclude that bifurcation of the *Monell* claim is a proper means to combat this potential prejudice."). Plaintiff argues that the other acts evidence will pertain only to victims of several of the named defendants. However, their presentation will contain evidence of wide-ranging misconduct by at least some non-party officers. Pl. Resp. at 13 (admissions by the City and Martin that instances of torture revealed a pattern or plan by Defendant Burge and non-party officers John Yucaitis and Patrick O'Hara). The plaintiff argues that the potential prejudice to individual defendants could be mitigated through limiting instructions, but in the Court's view, additional jury instructions limiting the jury's consideration of the *Monell* evidence, on top of the limiting instructions that will be needed with respect to Rule 404(b) evidence, would only add complexity to what already promises to be a complex trial and substantially exacerbate the potential for juror confusion.

All of these factors suggest that bifurcation of the *Monell* claim would not only serve judicial economy and efficiency, but also ensure that the individual defendants are not prejudiced

unfairly by the presentation of evidence that does not relate to the violations that they are alleged to have committed. Against the potential prejudice to the individual defendants of a unitary trial including the plaintiff's sweeping *Monell* claim, however, must be measured any prejudice to the plaintiff from granting the bifurcation motion. The plaintiff's principal argument about prejudice, however, is premised on the unfairness of allowing the City "to sidestep the adjudication of its liability to Mr. Kitchen." Pl. Resp. at 10. But as discussed above, granting bifurcation will not preclude the plaintiff from asserting his *Monell* claim. He may be precluded from doing so if he fails to establish that a city employee violated his constitutional rights, but such a failure would not be the result of bifurcation; in fact, such an outcome is a potential source of the economies to be achieved from bifurcation.

The plaintiff has also identified two situations, in which bifurcation could potentially delay the plaintiff's recovery of compensatory damages—*i.e.* if a constitutional violation is found, but the defendants are entitled to qualified immunity or the jury determines that some unnamed party is responsible for the violation. As noted below, however, these situations are exceedingly unlikely, and are mitigated by the City's Stipulation. Indeed, so long as the City's proposed Stipulation adequately ensures that the plaintiff's position is not compromised by bifurcation of the *Monell* claim, the Court perceives no prejudice to the plaintiff arising from bifurcation. And it is to the issue of the adequacy of the City's proposed Stipulation that the Court now turns.

### B. Stipulation

To mitigate any potential prejudice to the plaintiff resulting from bifurcation of the *Monell* claim, the City offers a proposed Stipulation, in which it would agree to "the entry of judgment against the City for compensatory damages and, to the extent allowed by the Court,

14

reasonable attorney's fees pursuant to 42 U.S.C. § 1988." *See infra* Appendix, at ¶4.The Stipulation provides that these terms will apply if the individual defendants are held liable to the plaintiff on a motion for summary judgment or "any other court procedure not involving a finder of fact that determines, based on the merits of the case, the Defendant Police Officers and/or Municipal Official Defendants are liable to Plaintiff for a violation of Plaintiff's constitutional rights as alleged in the pending complaint." *Id.* The Stipulation further provides that its terms apply even if the finder of fact determines that the individual defendants violated the plaintiff's constitutional rights, but are not liable because they are entitled to qualified immunity. *Id.* In compliance with the Court's request, the plaintiff has filed objections to certain provisions and aspects of the proposed Stipulation. *See* Dkt. 393 ("Plaintiff's Objections to the City of Chicago's Proposed 'Stipulation'").

### 1. *Municipal Liability Based on Wrongdoing by Non-Party Employees*

As drafted, the proposed Stipulation would not cover the situation in which the jury finds a constitutional violation was caused by a non-party officer, because the Stipulation provides only that the City will agree to an entry of judgment, "if the finder of fact in this case finds that any of the Defendant Police Officers or the Municipal Official Defendants who remain as defendants through the conclusion of the trial is liable to the plaintiff for a violation of the plaintiff's constitutional rights as alleged in the first amended complaint."

To remedy this problem, the plaintiff proposes amending the phrase "any of the Defendant Police Officers or the Municipal Official Defendants who remain defendants through the conclusion of trial," wherever it appears in paragraphs 4 and 5 of the Stipulation, to read "any former and present employee of the City of Chicago." As discussed above, the Court agrees that some modification of this sort is necessary; otherwise, a verdict of no liability against the

15

individual defendants would not foreclose the possibility of *Monell* liability premised on the acts of some other City employee(s) (in other words, and as discussed above at 6, a verdict for the plaintiff on the *Monell* claim would not necessarily be inconsistent with a verdict that the individual defendants were not liable).

At the same time, it is not reasonable to require a stipulation premised on a finding that some unknown City employees, as to whom there is no evidentiary basis to conclude that they were involved in the acts alleged in the complaint, violated the plaintiff's constitutional rights. Accordingly, the Court will limit the plaintiff's proposed modification to any additional City employees whom the plaintiff identifies, by the close of discovery, as persons potentially responsible for the constitutional violations alleged in the complaint. The City may object to the adequacy of the evidentiary basis for including any of the additional individuals identified; the Court will rule on any such objections on the basis of whether the evidentiary basis would be sufficient to support a jury finding, by a preponderance of the evidence, that the individual violated the plaintiff's constitutional rights.[5] Accordingly, the Stipulation should be amended to provide that the City will consent to an entry of judgment "if the finder of fact in this case finds that any of the Defendant Police Officers or the Municipal Official Defendants, or any former or present employee of the City whom the Court permits to be included on a special verdict form, is liable for a violation of the plaintiff's constitutional rights as alleged in the first amended complaint."

---

[5] This approach is effectively no different than the approach that would be required had the plaintiff opted to sue only the City. In that case, the jury would be required to identify the individual(s) alleged to have committed the acts of abuse and torture in order to establish the City's liability; to do so, the Court would have to determine the names of the City employees as to whom there was an adequate evidentiary basis to list on the special verdict form.

The plaintiff also requests that the Stipulation be amended "to make clear that Plaintiff is entitled to have the jury instructed that Plaintiff must prevail if any of the named defendants or any other former or present City of Chicago employees violated Plaintiff's constitutional rights." This request, however, is too broad. As discussed above, individual defendants could, in theory, have an affirmative defense that would preclude a judgment against them even if they are found to have committed a constitutional violation. The jury cannot, therefore, be instructed that the plaintiff "must prevail" on its claims against them. The Stipulation, however, would require an entry of judgment by the Court against the City without regard to any affirmative defense that the individual defendants may raise. This amendment is therefore unnecessary.

## 2. *Qualified Immunity*

The plaintiff next requests that the Stipulation be amended to make explicit that the Plaintiff is entitled to a special interrogatory asking the jury whether it finds that the individual defendants have qualified immunity. Furthermore, the amendment must provide that if the jury finds a constitutional violation, but the defendants have qualified immunity, the jury must nevertheless specify a damages award. Although it is exceedingly unlikely that any of the individual defendants would be entitled to qualified immunity if they were found to have tortured the plaintiff—*see, e.g., Tillman v. Burge,* 813 F. Supp. 2d 946, 966 n. 12 (N.D. Ill. 2011) ("that torture is unlawful has been clearly established for decades, thus rendering futile any argument that an individual who engaged in torture should enjoy qualified immunity")—the Court nevertheless agrees that the plaintiff's proposed modification is necessary (unless the individual defendants waive qualified immunity) to ensure that, in the event any of the individual defendants asserts a qualified immunity defense and is found not liable, the parties would be able

17

to discern whether the finding of no liability was based on the immunity defense or a finding that the defendant had not committed a constitutional violation.

Similarly, to make the City's consent to judgment effective, the special verdict form would have to ask the jury to specify the amount of damages arising from any finding of a constitutional violation, even if it concludes that the defendant in question is entitled to qualified immunity. Accordingly, the City shall revise the proposed Stipulation to provide for a special verdict form in which the jury may indicate whether it has found a constitutional violation, whether the individual defendants have qualified immunity, and a damages award if a constitutional violation occurred. The precise wording of that special verdict form will be deferred until a pre-trial conference in which both parties will have the opportunity to submit proposals consistent with this ruling.

### 3. *Appeal and Post-Trial Motions*

The plaintiff argues that paragraph 6 of the Stipulation should be deleted. Paragraph 6 provides that the City does not waive any defense not specifically stated in the Stipulation. Additionally, the paragraph provides that the "City retains the right to move to alter or amend any judgment, move for judgment as a matter of law reversing such judgment, appeal, or seek any other post-trial relief from such judgment based on any grounds not inconsistent with the stipulation." The plaintiff objects that the City cannot legitimately retain these rights, if the Court accepts the Stipulation. However, the City may pursue those rights only "based on grounds not inconsistent with the stipulation."

The Court, not the City, will determine whether the grounds upon which the City pursues the aforementioned rights are "inconsistent" with the Stipulation. To the extent that the Court is required to construe the Stipulation, it will do so in accordance with the Stipulation's purpose—

18

to mitigate any prejudice that may inure to the plaintiff as a consequence of the bifurcation of his claims. And because an appeal based on a legal challenge to the validity of a finding of constitutional violation(s) by one or more of the individual defendants would be "inconsistent" with the terms of the Stipulation (by which the City agrees to entry of judgment based on the finder of fact's finding of a constitutional violation, not an appellate court's affirmation of such a finding), the scope of the City's reservation of rights under this provision appears to be quite narrow. Thus, as long as the City's rights are conditioned on consistency with the terms of the Stipulation, the plaintiff will not be prejudiced by the City's reservation of rights.[6] Accordingly, the plaintiff's objection to paragraph 6 is overruled.

### 4. *Denials in Paragraph 3*

Plaintiff next seeks to have the City's denials of *Monell* liability in paragraph 3 of the Stipulation deleted. According to the plaintiff, the City cannot have it both ways, by "avoid[ing] trial on the *Monell* issues *and* insist[ing] that the allegations are untrue." However, as discussed above, bifurcation does not necessarily mean that the City will avoid trial on the *Monell* claim. The Stipulation is offered to mitigate any potential prejudice to the plaintiff caused by staying discovery and trial in the event he cannot recover compensatory damages after adjudication of his claims against the individual defendants. The denials by the City in paragraph 3 of the

---

[6] Indeed, the Court notes that in the absence of bifurcation, any judgment in the plaintiff's favor would be subject to appeal on any available ground. Thus, the scope of any waiver of appellate rights by the City need only be sufficient to ensure that the protections provided by the stipulation—such as direct liability premised on individual violations and waiver of qualified immunity—are not at risk on appeal. The Stipulation, which effectively waives (by consenting to entry of judgment on this basis) any challenge to the validity of a determination by the finder of fact that one or more of the individual defendants (or other individuals who satisfy the criteria for inclusion on a special verdict form) violated the plaintiff's constitutional rights, actually puts the plaintiff in a more favorable position regarding appellate risk than he would be in absent bifurcation.

stipulation cover the different ways *Monell* liability could accrue, and have no bearing on the mitigation of prejudice to the plaintiff. Therefore, plaintiff's objection is overruled and the request to delete paragraph 3 is denied.

### 5. *City's Right to Participate in Settlement*

The plaintiff requests that the final sentence of paragraph 5 of the Stipulation be deleted because it allows the City to control whether the individual defendants can settle. The final sentence of paragraph 5 provides that, "The Stipulation will not apply to liability based on a settlement to which the City is not a party, or a non-court procedure such as arbitration or mediation, unless the City agrees to be bound by such proceedings." According to the plaintiff, by conditioning the City's consent to judgment upon its participation in, or approval of, an individual defendant's settlement creates a conflict of interest because the City "holds a hammer over the head of any defendant who might otherwise wish to resolve this case."

To the contrary, it is the plaintiff's suggested revision that creates a potential conflict of interest. Allowing the individual defendants to settle without the City's approval would create a moral hazard, as individual defendants eager to put the matter behind them may be willing to settle at any cost, while leaving the City to foot the bill. More to the point, this provision does not change the status quo. The City is not attempting to secure a right it would not otherwise have in the normal course of the litigation.

Pursuant to Illinois law, the City would potentially be required to pay any judgment or settlement for compensatory damages entered against the individual defendants. *See* 745 ILCS 10/9-102 ("A local public entity is empowered and directed to pay any tort judgment *or settlement* for compensatory damages…for which it or an employee while acting within the scope of his employment is liable.") (emphasis added); s*ee also Sperandeo v. Zavitz,* 365 Ill.

20

App. 3d 691, 694, 850 N.E.2d 394, 397 (Ill. App. Ct. 2006) ("[S]ection 9-102 clearly requires a local public entity to pay any tort judgment or settlement for compensatory damages for which its employee acting within the scope of his employment is liable."). Indeed, the plaintiff has included a count against the City under § 9-102 in his amended complaint. *See* Am. Compl. at 44 (Count XII). And as the Seventh Circuit has explained, "[b]ecause state law requires the [municipality] to pay, federal law deems [the municipality] an indispensable party to the litigation." *Askew v. Sheriff of Cook Cty.,* 568 F.3d 632, 636 (7th Cir. 2009) (citing *Carver v. Sherriff of LaSalle Cty.,* 324 F.3d 947, 948 (7th Cir. 2003)). Municipalities are indispensable parties and "must be named as parties and are entitled to remain in the suit, so that they may veto improvident settlements proposed (at their expense)." *Carver,* 324 F.3d at 948.

As such, as long as the plaintiff seeks indemnification of the individual defendants by the City under § 9-102, the City would be a necessary party to the litigation of the claims against the individuals, with or without the Stipulation. Accordingly, the Stipulation does nothing to change the City's rights or involvement in settlement proceedings, but merely preserves the status quo under state and federal law. The Court notes that Judges Dow and Hart approved similar provisions in modified stipulations. *See Cruz,* 2008 WL 5244616, at *3 (Dow, J.); *Almaraz v. Haleas,* 585 F. Supp. 2d 988, 991 (N.D. Ill. 2008) (Hart, J.). Accordingly, the plaintiff's objection to paragraph 5 is overruled, and the request to delete the final sentence of paragraph 5 is denied.

### 6. *Indemnification for State Law Liability*

The plaintiff also complains that the Stipulation does not cover liability for violations of state law. The plaintiff's state law claims however, are not related to *Monell* liability. The purpose of the Stipulation is to mitigate any potential prejudice to the plaintiff from bifurcation

of the *Monell claim*. If, as discussed above, a constitutional violation is found at trial the plaintiff may rely on the Stipulation, as modified in accordance with this Order, to recover compensatory damages. (And, again, the plaintiff would not be foreclosed from proceeding with his *Monell* claim). If none of the individual defendants (or other individuals identified pursuant to subsection 1, above) are found to have violated the plaintiff's constitutional rights, a liability finding on any of the state law causes of action would not, however, suffice as a predicate to *Monell* liability, and therefore are not a potential source of prejudice that the Stipulation is meant to mitigate.

Moreover, the plaintiff has brought a state law respondeat superior claim against the City in his first amended complaint. *See* Am. Compl. at 43 (Count XI). The plaintiff's state law claims and respondeat superior claim are not being bifurcated by this Order. If the plaintiff is going to recover on his state law claims then, he will do so at the trial of the individual defendants, with or without the Stipulation. Therefore, the plaintiff's suggested modification is unnecessary. Accordingly, there is no basis for this proposed modification to the Stipulation.

### 7. *Title of the City's Document*

The plaintiff also objects the City's document being styled as a "Stipulation," because that title implies that the plaintiff does not oppose the bifurcation motion. *See* Dkt. 393 at 4. The plaintiff's objections to the motion to bifurcate are well-documented, but the Court acknowledges that the term "stipulation" is often construed to imply a mutual agreement between the parties affected by its terms. Accordingly, the City's proposed "Stipulation" should be re-titled as a "Limited Consent to Entry of Judgment against Defendant City of Chicago."

Finally, it bears noting that the City's proposed stipulation provides several benefits to the plaintiff beyond those that would inure to him solely by operation of the City's statutory duty

22

to indemnify the individual defendants. In addition to the advantageous appellate position the Stipulation provides (discussed in subsection 3, above), the Stipulation provides "the benefit of direct judgment against the City if a constitutional violation is established," which again, would save the plaintiff the time and expense of litigating the *Monell* claim. Def. Reply at 3. And, as Judge Zagel has explained in response to the argument that a similar stipulation was "illusory" because Illinois law (and the collective bargaining agreement between the City and its officers) already required the City to indemnify its police officers:

> First, the stipulation is binding for the life of this case, even if state law or union agreements change. Second, without the stipulation Plaintiff may have to bear the costs of enforcing the existing indemnification rights if, for example, he prevails against an individual officer but loses its case against the City. If that were to occur, the City might then claim on a variety of grounds that it does not have to indemnify the officers.

*Parker,* 479 F. Supp. 2d at 829 n. 3.

*       *       *

On balance, the Court finds that bifurcation of the *Monell* claim, in this case, will protect the individual defendants from undue prejudice that may result from a unitary trial including the plaintiff's sweeping *Monell* claim and is likely to result in efficiencies of litigation and discovery, serve judicial economy, and simplify matters for a complex trial that involves claims against eight individual defendants. Furthermore, the potential costs and prejudice to the plaintiff are, in the Court's view, entirely mitigated by the City's Stipulation. Accordingly, the City's motion to bifurcate and stay discovery and trial on the *Monell* claim is granted, contingent upon the City submitting a revised stipulation with modifications consistent with this Order. The City is granted 14 days to (i) tender a revised stipulation that incorporates those modifications and (ii) confirm its waiver of any argument that Plaintiff's *Monell* claim would be moot if asserted following entry of a judgment against the City based on its proposed Stipulation. In the event

that the City opts not to tender one or both of these documents, this Opinion will be deemed to be withdrawn and the Court will reconsider its ruling on the City's Motion.

Date: November 2, 2012

_____
John J. Tharp, Jr.
United States District Judge

*Appendix*

## STIPULATION TO ENTRY OF JUDGMENT
## AGAINST DEFENDANT CITY OF CHICAGO

Defendant City of Chicago ("City") hereby stipulates to the following:

1.      Plaintiff Ronald Kitchen filed a first amended complaint against, *inter alia:* Defendant City of Chicago (the "City"); former police officers Jon Burge, John Byrne, Michael Kill, Thomas Byron, and John Smith (the "Defendant Police Officers"); and, former municipal officials Terry Hillard, Leroy Martin, Gayle Shines, and Thomas Needham (the "Municipal Official Defendants"). Plaintiff's first amended complaint includes various claims brought under federal and state law.

2.      In Plaintiff's first amended complaint, he claims the Defendant Police Officers and the Municipal Official Defendants violated his constitutional rights as a result of various policies, practices, and customs of the City of Chicago ("City"). In other words, Plaintiff has brought a *Monell* claim against the City of Chicago.[7] Plaintiff seeks a judgment against the City for damages caused by the alleged violation of his rights under the Constitution.

3.      Even if plaintiffs constitutional rights were violated as alleged, the City specifically denies any such constitutional violation was caused by a person with "final policymaking authority," denies the City has any "policies, customs or practices" that cause constitutional deprivation, denies it has any widespread practice that is "so permanent and well-settled as to constitute a custom or usage with the force of law," denies it has the requisite degree of culpability therefrom, and denies any alleged "custom, policy or practice" of the City directly caused the alleged violations that would give rise to liability under 42 U.S.C. §1983.

4.      Without admitting Plaintiff's *Monell* allegations in the pending complaint, the City agrees to entry of judgment against the City for compensatory damages and, to the extent allowed by the Court, reasonable attorney's fees pursuant to 42 U.S.C. §1988, if the finder of fact in this case finds that any of the Defendant Police Officers or the Municipal Official Defendants who remain as defendants through the conclusion of trial is liable to Plaintiff for a violation of Plaintiff's constitutional rights as alleged in the first amended complaint. With respect to the individual defendants' assertions of qualified immunity, the City will agree to entry of judgment against it for compensatory damages and, to the extent allowed by the Court, reasonable attorney's fees pursuant to 42 U.S.C. §1988, if the finder of fact determines that any of the Defendant Police Officers or Municipal Official Defendants who remain as defendants through the conclusion of trial violated Plaintiff's constitutional rights as alleged in the first amended complaint, even if that Defendant Police Officer or Municipal Official Defendant is further found to be not liable to Plaintiff because that defendant is entitled to qualified immunity.[8] The terms

---

[7] *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978).

[8] The City does not intend or agree that this Stipulation is applicable to any claims for which the Defendant Police Officers or Municipal Official Defendants are entitled to absolute immunity

25

of this Stipulation will also be applied if the Defendant Police Officers and/or Municipal Official Defendants are held liable to Plaintiff on a motion for summary judgment, or held liable to Plaintiff pursuant to any other court procedure not involving a finder of fact that determines, based on the merits of the case, the Defendant Police Officers and/or Municipal Official Defendants are liable to Plaintiff for a violation of Plaintiff's constitutional rights as alleged in the pending complaint.

5.      For this purpose and in this case only, the City waives its right under *Monell* not to be held liable for damages pursuant to Section 1983 without proof that the City by its "policy, custom or practice," and with the requisite degree of culpability, caused the alleged constitutional violation. As stated herein, if liability for a constitutional violation is found against a Defendant Police Officer or Municipal Official Defendant as described in the foregoing paragraph, the City agrees to accept liability against it for compensatory damages and, to the extent allowed by the Court, reasonable attorney's fees, based solely on the alleged constitutional violation committed by the Defendant Police Officers and/or Municipal Official Defendants, and not upon any alleged "custom, policy or practice." The Stipulation will not apply to liability based on a settlement to which the City is not a party, or a non-court procedure such as arbitration or mediation, unless the City agrees to be bound by such proceedings.

6.      The City does not waive any defense it may have to the claims in this case except as specifically stated above. The City retains the right to move to alter or amend any judgment, move for judgment as a matter of law reversing such judgment, appeal, or seek any other post-trial relief from such judgment based on any grounds not inconsistent with this stipulation.

---

from suit. *See Mitchell v. Forsythe,* 472 U.S. 511, 525-26 (1985); *Briscoe v. LaHue,* 460 U.S. 325 (1983).